PEOPLE v FAIRBANKS

Docket No. 91394. Submitted June 9, 1987, at Detroit. Decided November 2, 1987.

Michael Fairbanks was charged in Detroit Recorder's Court with two counts of criminal sexual conduct in the first degree and one count of possession of a firearm during the commission of a felony. Following a bench trial, defendant was convicted of only one count of assault with intent to commit criminal sexual conduct in the second degree and was sentenced to four years probation, the last year of which was to be served in jail, Leonard Townsend, J. At trial, the court stated that there was an assault with intent to commit criminal sexual conduct in the second degree but that it didn't think the felony-firearm charge would be supported by the evidence. Defendant appealed, arguing that the court's verdict is inconsistent with its findings of fact.

The Court of Appeals *held:*

The prosecutor properly did not charge assault with intent to commit criminal sexual conduct in the second degree, because the facts recited by the victim are consistent with two completed incidents of criminal sexual conduct in the first degree. Furthermore, the trial court stated in its findings of fact that, while the victim had no reason to lie, it believed some of the testimony given by the victim but not other testimony. The court apparently reduced the prosecutor's charges to an included offense to comport with some idea of equity or some element of fairness. The facts do not support the trial court's findings or conclusions that there was an assault with intent to commit criminal sexual conduct in the second degree, because the only aggravating circumstance applicable to this case was possession of a firearm, as to which the trial court specifically found in favor of defendant, although inexplicably so.

Reversed.

SHEPHERD, P.J., dissented. He would remand for an eviden-

REFERENCES

Am Jur 2d, Assault and Battery §§ 48 *et seq.*

Assault and battery: sexual nature of physical contact as aggravating offense. 63 ALR3d 225.

tiary hearing that would place upon the record whether any understandings or other agreements were arrived at prior to trial that would justify defense counsel's statement to the Court of Appeals that the result of the trial was known in advance. He would reserve jurisdiction and require the parties to file supplemental briefs on the appropriate remedy to be granted in light of the transcript on remand and would specifically direct the parties to brief the issue of double jeopardy. He would not reverse at this point.

Appeal — Assault and Battery — Criminal Sexual Conduct.

A defendant's bench-trial conviction of assault with intent to commit second-degree criminal sexual conduct must be reversed where the crimes charged were first-degree criminal sexual conduct and possession of a firearm during the commission of a felony, the evidence supports the crimes charged, and the findings of fact do not support a conviction of assault with intent to commit second-degree criminal sexual conduct (MCL 750.227b, 750.520b, 750.520g[2]; MSA 28.424[2], 28.788[2], 28.788[7][2]).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of the Criminal Division, Research, Training and Appeals, and *Susan Randolph,* Assistant Prosecuting Attorney, for the people.

*Steven Rabinovitz,* for defendant on appeal.

Before: Shepherd, P.J., and M. J. Kelly and C. M. Forster,* JJ.

M. J. Kelly, J. Defendant Michael Fairbanks was charged with two counts of criminal sexual conduct in the first degree, MCL 750.520b; MSA 28.788(2), and one count of possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). On December 4, 1985, a bench trial was held in Detroit Recorder's Court. Defendant was found guilty of only one count of assault with

---

* Circuit judge, sitting on the Court of Appeals by assignment.

intent to commit criminal sexual conduct in the second degree, MCL 750.520g(2); MSA 28.788(7)(2). On January 30, 1986, defendant was sentenced to four years probation, the last year to be served in the Wayne County jail. The probation order included requirements of no contact with the complainant and no assaultive behavior, and defendant was required to pay court costs and make restitution.

This case arose out of an incident on the night of July 24, 1985, in the City of Detroit. The fifteen-year-old complainant had been involved in an argument with her uncle that evening and was asked to leave his home. She walked to the nearby Country Boy Store, near Burgess and Fenkell, and approached defendant and two other men at around 11:00 P.M. After the complainant explained her problem, defendant told her she could spend the night at his house. She briefly returned to her uncle's, picked up some clothing, and went to defendant's home.

The complainant testified that arrangements were made for her to sleep on defendant's bed while he would sleep on the couch. She prepared for bed, and when she came out of the bathroom, the house was dark. She proceeded to the bed, wherein she discovered defendant. The complainant testified she told defendant to choose where he wanted to sleep and she would sleep in the other location. Defendant then told her she "wasn't going anywhere." Defendant held her on the bed, crawled on top of her and proceeded to pull her clothes off. The complainant was fighting and kicking and at one point defendant struck her on the leg. Defendant eventually forced her to have intercourse with him.

Defendant then ordered the complainant to take a shower. When she came out of the shower,

another struggle ensued. Defendant momentarily left the room and returned with a pistol. Defendant loaded the gun in front of her and told her "he would blow [her] away right now, bury [her] somewhere and nobody would ever know about it." Defendant again forced sexual relations. During this time, the gun was on the nightstand next to the bed. The complainant then took another shower and defendant drove her to a friend's house. She told two people there she had been raped and called her aunt and the police. Christine Demetri testified that the complainant was in tears and her hair was wet that night. Detroit Police Officer Veda Sims testified that the complainant was teary, upset, and scared that night and that she did indicate defendant had possessed a gun. The parties stipulated that a doctor's report was inconclusive as to whether there had been any sexual contact.

Defendant testified on his own behalf. He admitted seeing the complainant at the Country Boy Store that night. He testified that after taking her to her uncle's to pick up some clothes, he dropped her off near the corner of Pilgrim and Blackstone. That, according to defendant, was the extent of his contact with the complainant that night.

A comment made by the trial court is the basis for this appeal. The judge stated: "We have here an assault with intent to commit criminal sexual conduct in the second degree and I think that under the circumstances that the testimony about the gun, I believe that the felony-firearm wouldn't be supported by the evidence . . . ."

Defendant appeals as of right urging that the trial court's verdict is inconsistent with its findings of fact, and we agree.

To support a conviction of assault with intent to commit criminal sexual conduct in the second

degree there must be assault with a sexual purpose and the facts very well may have supported such a charge as to the second incident. The prosecutor did not charge such an assault and we think properly so as the facts recited by the complaining witness are completely consistent with two completed incidents of criminal sexual conduct in the first degree. The trial judge's pertinent findings of fact follow:

> *The Court:* All right. The Court has reviewed the evidence. It was a very short case and I do remember the evidence and what I have to consider here is [the victim] making up a story and if she is, why would she do it.
>
> \* \* \*
>
> It was indicated through the testimony that she was mad with her uncle. All right. Fine. I'll accept that, but there's no actions taken against the uncle in this case. She didn't take revenge on him and there's been no evidence in this case that Mr. Fairbanks has ever done anything to her and there's no reason to show that she hated him or had any grudge against him or had any motivation to take this out on him or to make any false report against him for any reason. Again, in any kind of a rape case or any kind of personal assault case, the only witnesses are the two people involved. Either it's a question of consent where one party says well, this occurred but it was consensual, and there was no testimony that it was consensual in this case.
>
> The testimony of Mr. Fairbanks was that it didn't happen. So we still have a one-on-one situation. So the trier of fact has to look not only at the testimony of the witnesses, but all of the surrounding circumstances that are presented by the evidence in this case.
>
> [The victim] testified that she was in the house and that she had to take a bath and she cleaned up and took a bath and then she was driven to a

friend's house. The friend and the police both testified, I believe, that when they saw her that she was distraught, she was upset and her hair was wet. There's no evidence at all that it was raining. So that supports—she must have been in that house for some reason. Her hair was wet. Also, there's no evidence that she knew where Mr. Fairbanks lived. She had never been to that house before, but the officer testified that she took them right by there and pointed that house out to them that night. Again, I usually have suspicions about people reporting that they were assaulted a month or two or three months later or even a week later, but we have something here where this came up the same night and she was seen by the police and she was in a bad condition and it could be argued because of the other thing with the uncle, but from the testimony she was pretty upset and she stated right then and there what had happened to her. I believe we have a young lady who was out there by herself and Mr. Fairbanks was out there and she went to his house which was unwise and he decided to take advantage of the situation.

We have here an assault with intent to commit criminal sexual conduct in the second degree and I think that under the circumstances that the testimony about the gun, I believe that the felony firearm wouldn't be supported by the evidence, but I think there was some contact, some activity involving [the victim] and Mr. Fairbanks and I don't think that she made this story up. There's nothing to get even with him about.

I've heard all of the arguments and the evidence in the case and I've heard all of the witnesses. I've heard the arguments of the attorneys. I heard everything. I already made a judgment. I believe in this case that Mr. Fairbanks is guilty of one count of assault with intent to commit criminal sexual conduct in the second degree. So I'll refer the matter to the Probation Department for a Presentence Report.

I'll continue the bond.

Why would the court believe the complaining witness, or at least state that he believed her because she identified the defendant's house, her hair was wet, and she was in that house for some purpose and yet disbelieve her on the critical element of whether or not the defendant possessed a firearm? Furthermore why would the court disbelieve the complaining witness as to one of the counts of criminal sexual misconduct and believe her as to the other? It was apparently a case of reducing the prosecutor's charge to comport with some idea of equity or some element of fairness and to reduce the charge to an included offense.[1] We find the facts do not support the trial court's findings or conclusions that there was an assault within the meaning of MCL 750.520g(2); MSA 28.788(7)(2) because the only aggravating circumstance applicable in this case was possession of a firearm, as to which the trial judge specifically found in favor of the defendant, although inexplicably so.

Reversed.[2]

C. M. FORSTER, J., concurred.

SHEPHERD, P.J. *(dissenting)*. I dissent and would remand for an evidentiary hearing for the reason that I am concerned with what, according to my perception of the case, may have happened here. This was, in my view, either a compromise verdict or a sham trial. The trial judge had before him a one-on-one situation. Extremely serious allegations

[1] While we agree with the dissent that "there is much in the present record that is not available to us" we are resolutely opposed to a remand for an evidentiary hearing that would require recording of matters purposefully omitted from the record. Such a roundabout to infinity is beyond the pale of an appellate court's drill.

[2] We leave the question of double jeopardy for resolution in the trial court if there is further prosecution.

were made. The judge may have had a reasonable doubt on the real charges (two acts of criminal sexual conduct in the first degree [CSC-1] and felony firearm) and picked a lesser offense to resolve the matter.

How can we seriously believe otherwise when the evidence is so clear from the victim? Either she was raped twice by a man who used a gun or nothing happened at all, i.e., she was lying. The trial judge stated that the victim had no reason to lie, and then found the defendant guilty of only an assault with intent to commit CSC. To make matters worse, he found the defendant not guilty of the gun charge. If the victim is to be believed at all, defendant is guilty of two counts of CSC-1 plus felony firearm. There is no testimony that would justify a middle ground.

The sentence was four years probation with the last year to be spent in the county jail. Anyone with a knowledge of reality knows that this is a slap on the wrist. Traditionally, the last year is suspended if the defendant is crime-free for the first part of the sentence. Either defendant is guilty of one of the most heinous offenses known to mankind or he is guilty of nothing. In either event, the sentence is not appropriate.

There is an indication here that the trial judge with the cooperation of the prosecutor and trial counsel may have used the device of a conviction of assault in order to dispose of a difficult case. This is so because at oral argument counsel for defendant acknowledged that the trial was a charade and that he knew the result before the trial began. When attorneys disclose such facts to us at oral argument I believe we have an obligation to pursue the matter to its conclusion. The relief I propose herein is designed to that end.

Whatever occurred here, everyone was supposed

to be happy. The prosecutor had a conviction, the victim had at least some measure of satisfaction, and the defendant was presumed by everyone to be content with an assault conviction and no substantial sentence, given the fact that he might have been convicted of a crime that carries a life sentence.

What suffers are the system of justice and society as a whole. The public interest gains nothing and loses much if a vicious rapist gets probation or if an innocent man carries the burden of any conviction at all.

Our Supreme Court has said in *People v Vaughn,* 409 Mich 463, 466; 295 NW2d 354 (1980):

> Juries are not held to any rules of logic nor are they required to explain their decisions. The ability to convict or acquit another individual of a crime is a grave responsibility and an awesome power. An element of this power is the jury's capacity for leniency. Since we are unable to know just how the jurors reached their conclusion, whether the result of compassion or compromise, it is unrealistic to believe that a jury would intend that an acquittal on one count and conviction on another would serve as the reason for defendant's release. These considerations change when a case is tried by a judge sitting without a jury. But we feel that the mercy-dispensing power of the jury may serve to release a defendant from some of the consequences of his act without absolving him of all responsibility.

The Court also said in *People v Chamblis,* 395 Mich 408, 428; 236 NW2d 473 (1975):

> We are convinced that the cause of justice is not well served by convicting of assault and battery a defendant charged with murder. *As a matter of policy people who commit serious crimes should be*

*punished for those offenses, and those who did not
commit such serious crimes should not be tried for
those crimes only to be found guilty of a much
lower offense.* In the example cited, if the most
serious offense for which a jury feels conviction is
justified is assault and battery, the original charge
of murder appears to bear no realistic relationship
to the offense committed, and no good purpose
would be served by allowing such an instruction.

At some point, both the defendant and the pros-
ecution should be able to prevent any further
potential for "compromise." [Emphasis added.]

In order for an assault conviction to be justifi-
able in this case the trial court would have to have
found that the witness was telling the truth when
she stated that the defendant made some unlawful
approaches to her with a view toward having
sexual intercourse but that she was lying in her
testimony about actual penetration. The trial
judge did not make such a finding but instead
clearly stated that he believed the witness and
then, without any logical or factual basis, acquit-
ted defendant of the felony-firearm charge and
picked the assault charge as a vehicle for closing
the case. If this is what occurred we should not let
the conviction stand. However, counsel for defen-
dant was frank to admit at oral argument that
there were off-the-record matters that he could not
discuss. I do not know what such off-the-record
matters may have been nor do I know from the
current record whether this was a compromise
verdict or a charade.

If this trial was nothing more than the acting
out of a prearranged scenario where defendant or
his attorney, the prosecutor and the trial court
cooperated for some reason in a trial that was not
a trial at all, we should consider remanding for a
new trial on all charges. See Anno: *Plea of guilty*

*as basis of claim of double jeopardy in attempted
subsequent prosecution for same offense,* 75 ALR2d
683, 691, for a discussion whether a conviction by
plea of guilty was, by reason of a sham proceeding,
not the basis for a double jeopardy claim. See also
21 Am Jur 2d, Criminal Law, § 257, p 452-453,
discussing collusive convictions or acquittals.

Since there is much in the present record that is
not available to us, I would remand under MCR
7.216(A)(5) for an evidentiary hearing that would
place upon the record whether any understandings
or other agreements were arrived at prior to trial
that would justify trial counsel's statement to this
Court that the result was known in advance. I
would reserve jurisdiction and would require the
parties to file supplemental briefs on the appropri-
ate remedy to be granted by this Court in light of
the transcript on remand. I would specifically
direct the parties to brief the issue of double
jeopardy, i.e., if this Court finds that the original
trial was a sham can it remand for a new trial on
all original charges? I am not prepared at this
point to reverse what might have been a serious
armed CSC case if, in fact, defendant or his counsel
participated in a charade with the cooperation of
others.